DAVID JONES'S EXECUTORS, appellants,

*v.*

THE STATE BANKING COMPANY, respondents.

A trust deed empowered the trustee to mortgage the lands thereby conveyed to such persons as the *cestui que trust* might designate in writing. The *cestui que trust* afterwards became indebted to the respondents for moneys paid by them for his use, on his checks and notes. Thereupon he requested the trustee in writing to execute a mortgage to the respondents to secure the payment of the notes or other commercial paper then or thereafter made or endorsed by him, and discounted by the respondents, not exceeding $10,000 in amount. Under a subsequent written request, the trustee gave another mortgage on the same premises to appellant's testator.—*Held*, that, as against the appellant's mortgage, the respondents could recover the full amount of the *cestui que trust's* notes paid by them, whether discounted by them or not, except one not duly protested, and also all of his checks so paid, not exceeding, in the aggregate, $10,000.

On exceptions to report of Amzi Dodd, Esq., advisory-master, who rendered the following opinion:

The question raised by the exceptions in this case is, whether certain checks and promissory notes which were computed by the master as part of the indebtedness secured by the open mortgage, were properly allowed. The exceptant insists that they were not, because not within the terms of the mortgage. The controversy arises as follows:

By deed of April 20th, 1871, John J. Korb and wife conveyed to John Whitehead certain real estate in trust for the purposes therein mentioned, of which the following was one trust:

"That in case Peter Wilhelm should desire, and should express such desire in writing, signed by him in the presence of one or more witnesses, then that the said John Whitehead should make, execute and deliver to such person or persons as the said Peter Wilhelm should, by such writing, designate and appoint, a mortgage or mortgages of and upon the said land and premises, or such part or parts thereof as the said Peter Wilhelm should describe in said

writing, and for such amount or amounts, and payable at such time or times, and in such manner as the said Peter Wilhelm should, by such writing, name, designate and appoint."

On the 3d of February, 1873, Peter Wilhelm had been for some time a dealer with the complainants, doing business in Newark. Their corporate name was the State Trust Company, since changed to the State Banking Company. He owed the bank, at the last-named date, $2,849.59, being the difference between the credit and debtor sides of his account, which difference is spoken of in the testimony as the amount of his overdrafts. The precise particulars of the transactions between Wilhelm and the bank, of which this indebtedness was the result, do not appear in the evidence. Whether it arose from checks drawn by Wilhelm, or from notes discounted for him or paid for him, or from such causes combined, it is not disputed that the indebtedness then existed, and that the bank had paid it on checks or notes for Wilhelm's account. Mr. Wilhelm had been a member of the corporation from its organization to January 9th, 1873. The cashier having reported to the finance committee that his account was overdrawn ; that in addition to this, the bank held a considerable amount of his paper, and it being known that he was financially embarrassed, he appeared before the committee, at their request, and agreed to secure the bank for his overdrafts and the notes in its possession, and for other advances the bank might thereafter make, by giving a mortgage on the premises in question. This was in January, 1873. At a subsequent meeting of the committee, he was present with Mr. Whitehead, his trustee and adviser, when a statement of his account was presented and arrangements made for the giving of the mortgage. The written request for it from Wilhelm, and the mortgage itself, were drawn by Mr. Whitehead, by whom the mortgage was executed and delivered to the bank. Both instruments are dated February 5th, 1873. Relying on the security thus taken, the bank forebore to press the existing indebtedness, and made other advances during two years or more, after which Wilhelm died. The mortgage is an open one, limited as security to $10,000. The amount found by the

Jones's Exrs. *v.* State Banking Co.

master to be due on it, April 18th, 1879, the date of his report, is $7,799.90.

The exceptions to the report are on the ground that the checks drawn by Wilhelm and paid by the bank are not commercial paper discounted for Wilhelm, and also that so many of the promissory notes as were not made or endorsed by Wilhelm and discounted by the bank, at his request, are not within the mortgage provisions. The checks, it is said, although paid, were not discounted. So also of notes made or endorsed by Wilhelm and paid by the bank. It is insisted that none of these checks or notes—constituting a large part of the indebtedness—were commercial paper discounted for Wilhelm by the complainants, and consequently should not have been allowed by the master. I am of opinion that the interpretation of the word *discount,* on which the exceptant relied, is an over-strict one, in view of the facts of this case, and that it cannot be adopted.

The phraseology of the written request to the trustee and of the mortgage which he executed, is copious and substantially the same in both. The former recites that

" Whereas, the State Trust Company have, for my benefit and accommodation and at my request, discounted for me certain promissory notes or other commercial paper made by me and endorsed by me; and whereas, I may obtain from the said the State Trust Company other advances and discounts of and upon other promissory notes or commercial paper, or may renew the said promissory notes or other commercial paper already made and endorsed or hereafter to be made and endorsed by me as aforesaid, or give others in lieu, renewal or exchange of the said notes or other commercial paper already made or endorsed and discounted for me by said company, or which may hereafter be made or endorsed by me and discounted by the said the State Trust Company for me, to an amount not exceeding in the aggregate the sum of $10,000 ; and whereas, I am desirous of securing the said the State Trust Company for the payment of such promissory notes or other commercial paper; now, therefore, I, said Peter Wilhelm, do hereby express my desire by this writing, and I do hereby request you, the said John Whitehead, to make, execute and deliver to the said the State Trust Company a mortgage of and upon the whole of the said land and premises so conveyed to you as aforesaid by the said John J. Korb, and mentioned and described in that deed, to secure to the said the State Trust Company the payment of the said promissory notes or other commercial paper already made by me or endorsed by me and discounted for me by the said the State Trust Company, and the payment of

any and all promissory note or notes or other commercial paper which may hereafter be made or endorsed by me to the said the State Trust Company, and discounted by that company for me, and of all or any promissory note or notes or other commercial paper which may be given in lieu, renewal or exchange of such promissory note or notes or other commercial paper already made or endorsed, or hereafter to be made or endorsed by me and discounted for me by said company, or of any part of said promissory note or notes or other commercial paper, or of any or either of them, according to the tenor and effect of said promissory note or notes or other commercial paper, to an amount not exceeding the sum of $10,000 in the aggregate."

In pursuance of the foregoing request, the trustee gave the mortgage, whose terms need not be recited, as they are admitted to be, in substance and effect, what is called for in the request.

Mr. Whitehead subsequently gave a mortgage on the same premises to one David Jones, on whose behalf he appeared as counsel before the master, and opposed the allowance of the payments and advances.

It is not claimed that the bank can be charged with actual notice of the subsequent mortgage. Its own mortgage being for future advances and duly registered, is entitled to priority over subsequent encumbrances for advances prior to such notice. *Ward* v. *Cooke, 2 C. E. Gr. 93.*

The subsequent mortgagee had notice of the full amount which the bank might claim. He made no inquiry to ascertain how much was claimed to be due, and does not stand in the position of a person injured or deceived by any misrepresentation. He was not misled, deceived or injured by any ambiguity or imperfection in the terms of the mortgage, descriptive of the nature of the past or future indebtedness to be secured. As to him, it was entirely competent for the parties to the first mortgage to vary or depart from such descriptive terms. The total sum named in the mortgage was the material fact to be looked to by the holder of the subsequent lien. *Lawrence* v. *Tucker, 23 How. 14; Lyle* v. *Ducomb, 5 Binn. 585.*

In the last-named case, six months after the making of the mortgage, and after a builder's lien had attached to the property, the mortgagor and mortgagee entered into an agreement that a description of notes not before embraced by the mortgage, and

made by a different drawer from the drawers named in the mortgage, should be embraced therein. It was held that the parties had a right to make such agreement as between themselves, and that it was also good as to third parties who were intervening encumbrancers, if 'the amount of the mortgage encumbrance were not thereby increased beyond the amount which the mortgage was intended to secure.

The same principle was applied in *Ward* v. *Cooke, 2 C. E. Gr. 93.* By parol agreement and understanding between Ward and Cooke, the mortgage was held good against a subsequent mortgagee for advances made after the execution of the second mortgage, though such advances were different from the debt stated in the first mortgage.

In the present case, the debtor Wilhelm was not the legal owner of the mortgaged premises, nor the maker of the mortgage. The terms of the deed in trust to Mr. Whitehead do not fully appear. Mr. Whitehead testifies that the premises were conveyed to him in trust for Wilhelm and his children. This is all that appears of the terms of the trust, except the recitals in the written request already quoted above. The power to mortgage conferred upon Wilhelm by Korb, in the trust deed to Whitehead, is of the most ample and unqualified kind, making Wilhelm, in effect, the beneficial owner of the land. This being so, if the recovery by the bank under their mortgage of their debt, so indisputably due, depended upon the question whether the words of the mortgage descriptive of the indebtedness, past or future, to be secured by it, could be varied or enlarged by parol agreement in the present case, as in the cases to which reference has been made, I should be unwilling to decide that question in the negative. But, in my judgment, such recovery does not depend upon the question of what was understood or agreed between the parties outside of the express provisions of the mortgage. The stress put by the exceptant on the word "discount" is not warranted, I think, by the fair sense and import of the word as it was used and understood by the parties. According to the contention of the exceptant, if Wilhelm had presented to the bank a note made or endorsed by himself,

payable ten days thereafter, and had received for it the full amount of the note instead of the amount, less the interest, for ten days, the note would not have been included within the security of the mortgage, but would have been included if such interest had been deducted. In the one case, it is said that the note would have been discounted, while in the other case, it would not. Unless this contention be one of substance and truth, the notes sought to be excluded are within the words of the mortgage. As to the checks, it is said that no discount was made. That they were commercial paper, and so within the letter of the mortgage, is clear. That they were paid in full, without deduction or discount, would not exclude checks any more than the same reason would exclude notes. In my judgment, for the plain purposes for which the mortgage was made, and in the plain sense in which the language must be taken to have been employed, neither notes nor checks made or endorsed by Wilhelm and paid by the bank, or for him at his request, expressed or implied, can be withdrawn from the security to which the bank looked, and on which it must have been supposed to rely.

Nineteen checks were allowed by the master, all of them drawn by Wilhelm, directed to and paid by the bank. The promissory notes allowed by the master are seventeen in number, twelve of which are made by Wilhelm and five endorsed by him. One of the endorsed notes does not appear to have been duly protested, and the legal liability of the endorser is therefore open to dispute. For this reason, the amount allowed on that note must be deducted from the total sum found due by the master. It is admitted that the liability on the other endorsed notes was legally complete. The proceeds of the notes went to Wilhelm, and came first or last from the complainants, and were charged to his account in the usual course of business.

In respect to the note not properly protested, the exception taken should be allowed. The remaining exception should be overruled.

Jones's Exrs. *v.* State Banking Co.

*Mr. J. Whitehead,* for appellants.

I. The complainant is bound by the strict terms of the mortgage.

" When a mortgage is given for a specific purpose, it must be exclusively applied to that purpose ; any other disposition of the security is a fraudulent misappropriation against which the mortgagor would be entitled to relief in equity." *Andrews* v. *Torrey,* 1 *McCart. 355, 358 ; Atwater* v. *Underhill, 7 C. E. Gr. 599 ; 7 C. E. Gr. 16.*

" A mortgage given to secure for materials in building a house does not cover a guaranty, nor liability as surety," *Doyle* v. *White, 26 Me. 341 ; Jones on Mort.* § *357, note 6 ; Large* v. *Van Doren, 1 McCart. 208 ; Phillips* v. *Thompson, 2 Johns. Ch. 423 ; Vanatta* v. *Brewer, 5 Stew. Eq. 268.*

" If a mortgage is given to secure an ascertained debt, the amount of that debt ought to be stated." *Hart* v. *Chalker, 14 Conn. 77; Pearce* v. *Hall, 12 Bush 209.*

" When a mortgage describes the debts secured, to entitle a debt to the benefit of the security, it must come fairly within the terms used in the mortgage." *Turnbull* v. *Thomas, 1 Hughes 172.*

II. The terms of the mortgage cannot, in this case, be extended, nor amplified, nor changed by any agreement before or after its execution, by the original parties to it. Nor is parol evidence of the intention of the parties in the making of the mortgage admissible.

" There is no rule of evidence better settled than that which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement." *Stevens* v. *Cooper, 1 Johns. Ch. 425 ; 2 Wm. Black. 1248 ; Sugden on Vendors [158], note c ; Renard* v. *Sampson, 12 N. Y. 561 ; Thorp* v. *Ross, 4 Abb. App. Dec., and note ; Botsford* v. *Barr, 2 Johns. Ch. 415 ; Martin* v. *Pyecroft, 2 De G. M. & G. 785 ; Sugden on Vendors [161], note a ; Chetwood* v. *Brittan, 1 Gr. Ch. 438.*

" Evidence to show a mistake in a written instrument must

be clear and strong, so as to establish the mistake to the entire satisfaction of the court." *Gillespie* v. *Moore, 2 Johns. Ch. 585; Lyman* v. *U. S. Ins. Co., 2 Johns. Ch. 630; Jones on Mort. § 96 p. 69, § 98 p. 71; Farmers L. & Tr. Co.* v. *Comm. Bank of Racine, 15 Wis. 424, 438; Jaqui* v. *Johnson, 11 C. E. Gr. 321.*

If a mortgage secures a specified sum, the parties cannot, by parol agreement, as against others who have acquired rights in the property, extend the mortgage to cover other debts or further advances. *Stoddard* v. *Hart, 23 N. Y. 556; Townsend* v. *Emp. St. Dress Co., 6 Duer 208, and cases cited; Large* v. *Van Doren, 1 McCart. 208.* See *Beekman F. Ins. Co.* v. *First M. E. Church, 29 Barb. 658; 18 How. Pr. 431.*

A mortgage to secure a gross sum which the mortgagee was at liberty to furnish in materials toward the erection of a house for the mortgagor, does not cover a collateral liability assumed by the mortgagee as surety or guarantor for the mortgagor. *Jones on Mort. § 345; Storms* v. *Storms, 3 Bush 77; Doyle* v. *White, 26 Me. 341.*

A mortgage conditioned to pay whatever sum the mortgagor might owe the mortgagee, either as maker or endorser of any notes or bills, bonds, checks, overdrafts, or securities of any kind given by him according to the conditions of any such writings obligatory, executed by him to the mortgagee as collateral security, was held to secure only such debts as were evidenced by writing. *Walker* v. *Paine, 31 Barb. 213.*

Where there is no ambiguity apparent, the fact that the parties have adopted and acted on an erroneous construction of the contract, will not preclude them from claiming their legal rights under a proper construction, as to subsequent transactions thereunder. *Stewart* ads. *L. V. R. R. Co., 8 Vr. 53.*

III. The burden of proof, as to the amount due, is on the complainant. *Freytag* v. *Hoeland, 8 C. E. Gr. 36; Klein* v. *McGuckin, 10 C. E. Gr. 433; Jones on Mort. § 346 p. 248; De Mott* v. *Benson, 4 Edw. Ch. 297.*

Jones's Exrs. v. State Banking Co.

*Mr. A. P. Condit,* for respondents.

I. The mortgage to the respondents was executed for the purpose of securing them for *all* their advances to Wilhelm on his commercial paper, to the extent of $10,000. All parties to the mortgage understood and intended that it should secure all advances—supposed it did secure them—and, throughout their dealings with reference to the mortgage and advances on it, *acted on* this supposition.

II. The benefit of the security by mortgage is not restricted to the special debt or debts described in the mortgage, but the parties may agree that the mortgage shall be a security for other or different debts, and what debts were intended to be so secured may be shown by parol. *Robinson* v. *Urquhart, 1 Beas. 515; Griffin* v. *N. J. Oil Co., 3 Stock. 49; 1 Hill. on Mort. 311; Bank* v. *Finch, 3 Barb. Ch. 293.*

In this case, the evidence is clear that the mortgage was intended to secure all the advances by the bank to Wilhelm, to the extent of $10,000; and, so long as the amount to be secured is not increased, a subsequent encumbrancer is not prejudiced by an agreement enlarging or changing the *character* of the debts to be secured. *Ward* v. *Cooke, 2 C. E. Gr. 93; Lawrence* v. *Tucker, 23 How. 14; Lyle* v. *Ducomb, 5 Binn. 590.*

Whitehead, who knew of the character of the debts intended to be secured by complainants' mortgage, was the counsel of Jones at the time of taking his mortgage, and Jones's mortgage is therefore held subject to the agreement of the parties as to the debts to be secured by complainants' mortgage. *1 Hill. on Mort. 319; Stone* v. *Lane, 10 Allen 74.*

III. The debts excepted to by the appellant come fairly within the terms of the mortgage, in which the term " discount " is not used in its narrow sense as an advance upon which interest is deducted, but is used as equivalent to advances.

PER CURIAM. This decree unanimously affirmed, for the reasons given by the advisory master in the foregoing opinion.